# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| DARREN SEIDELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Docket No. 1:22-cv-00192-NT |
| NICHOLAS HUGGINS, et al., | ) ) ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Before me are two motions to dismiss Plaintiff Darren Seidell's Complaint—the motion of Defendants Nicholas Huggins and Marc Egan (the "**State Defendants**") (ECF No. 10), and the motion of Defendant Officer Kinney (ECF No. 16). For the reasons stated below, both motions to dismiss are **GRANTED**.

## FACTUAL BACKGROUND[1]

### A.   **The August 11, 2020 Traffic Stop**

The Plaintiff, Darren Seidell, is an African American male. Compl. 7 (ECF No. 1). On August 11, 2020, Seidell took a Greyhound bus to Bangor, Maine, with a white woman, Jennifer Beeler. *See* Compl. 3, 7. When they exited the bus, Beeler was

---

[1] In resolving this motion, I consider the Plaintiff's Complaint (ECF No. 1) as well as undisputed state court records from *State v. Seidell*, No. PENCD-CR-2020-2517: the Judgment and Commitment (ECF No. 17-1); the Suppression Decision (ECF No. 10-1); and the Indictment (ECF No. 10-4). As to this latter category of evidence—the state court records—I note that on Rule 12(b)(1) motions, courts may consider extrinsic evidence where, as here, jurisdictional facts are challenged. *See Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

carrying a few bags, and Seidell was not carrying anything. Compl. 7. Seidell was the only minority on the bus. Compl. 7.

Defendant Nicholas Huggins, a special agent with the Maine Drug Enforcement Agency (the "**Maine DEA**"), and his associates were stationed in the bus station parking lot on "hot spot detail." Compl. 7. This consisted of watching the passengers who exited the bus and searching those who appeared to be trafficking in drugs. Compl. 7.

After getting off the bus, Seidell and Beeler called Brandon Kingsbury to give them a ride. Compl. 7. When Kingsbury arrived, Seidell got in the front seat and Beeler got in the seat behind him. Compl. 7. Maine DEA agents followed Kingsbury's vehicle and radioed a Bangor Police Department officer (presumably, Defendant Officer Kinney) to pull the vehicle over. Compl. 7–8. After Kingsbury's vehicle was pulled over, Seidell was removed from the vehicle and handcuffed. Compl. 8. Kingsbury and Beeler were told to exit the vehicle. Compl. 8. The officers searched Seidell, Kingsbury, and Beeler, but did not find anything on them. Compl. 8.

The officers then had a K-9 dog search the vehicle, and it hit on the right rear passenger seat where Beeler had been sitting. Compl. 9. The police and Maine DEA found a bag of drugs underneath Seidell's seat, which looked as if someone had kicked it or placed it there. Compl. 9. Beeler and Kingsbury denied the drugs were theirs, and the officers placed Seidell under arrest for trafficking drugs. Compl. 9. Kingsbury and Beeler were allowed to leave, even though Beeler was on bail for drug charges. Compl. 9.

Seidell asked why he was being charged when the dog alerted to Beeler's seat, not his. Compl. 9. He also told the officers that he was being racially profiled. Compl. 9. The officers did not give him an explanation and brought him to the Penobscot County Jail to book him on drug trafficking charges. Compl. 9.

### B. State Proceeding

On October 28, 2020, a grand jury indicted Seidell on the charge of Aggravated Trafficking in Scheduled Drugs, specifically fentanyl powder. Indictment (ECF No. 10-4); *see State v. Seidell*, No. PENCD-CR-2020-2517. During the state court proceedings, Seidell moved to suppress the evidence seized on the night of August 11, 2020, on the ground that he was subjected to an unreasonable search in violation of the Fourth Amendment. *See* Suppression Decision 1 (ECF No. 10-1).

In denying the motion to suppress, the Maine Superior Court made several factual findings that are relevant here. It found that:

- Seidell was previously convicted of Aggravated Trafficking pursuant to 17-A M.R.S. § 1105-A on May 7, 2015, and he was sentenced to a seven-year term of imprisonment with all but four years suspended and a three-year period of probation starting after completion of the unsuspended term of imprisonment. Suppression Decision 1–2. Seidell's probation conditions included "submit[ting] to random search and testing" for drugs and alcohol from a probation or law enforcement officer. Suppression Decision 2.

- In March of 2020, (after being released on probation in 2018), Seidell was incarcerated again on charges of violating his conditions of probation. Suppression Decision 2. While incarcerated, Seidell, in a bid to become a confidential informant, participated in a proffer with Agent Huggins and another Maine DEA agent. Suppression Decision 2. Seidell told the agents that after he was released on probation in June of 2018, he took between ten and fifteen trips to New York on a Greyhound bus to procure drugs. Suppression Decision 3.

- In July of 2020, Agent Huggins learned that Seidell was no longer incarcerated and that his probation conditions contained a random search provision. Suppression Decision 3. Agent Huggins contacted Seidell's probation officer who

3

gave Agent Huggins authority to search Seidell if he encountered him. Suppression Decision 3.

- On August 11, 2020. Agent Huggins was on "hot spot detail" at the Greyhound bus station because he had information that "numerous people" were bringing drugs to Bangor on the bus. Suppression Decision 4. When Agent Huggins saw Seidell and Beeler get off the bus, he became suspicious that Seidell was carrying drugs because of Seidell's previous history using the bus to transport drugs. Suppression Decision 4. Based on this information, he radioed to the Bangor police to perform the stop and search that led to Seidell's arrest. Suppression Decision 4–5.

After making these findings, the state court denied Seidell's motion to suppress the drug evidence as the product of an unreasonable search under the Fourth Amendment. The State court concluded, based on the totality of the circumstances, that the warrantless search was reasonable because the officers had reasonable suspicion based on "Agent Huggins' prior knowledge of Seidell's previous drug trafficking activities, his knowledge that Seidell had engaged in those activities while on probation in the past, the reputation of the Ramada Inn/Greyhound bus stop area for criminal drug activity, and Seidell[] . . . disembark[ing] from the Greyhound bus in that area." Suppression Decision 15.

## PROCEDURAL BACKGROUND

On June 21, 2022, Seidell filed his Complaint, alleging that the Defendants violated his constitutional rights by racially profiling him and by arresting him even though the drug dog identified a different seat of the car and the drugs were not in his possession. Compl. 10. He seeks a declaration that his constitutional rights were violated, a preliminary and permanent injunction ordering the Maine DEA defendants to stop singling out African Americans and to attend training classes,

4

compensatory damages in the amount of $1.00 and punitive damages in the amount of $10.00 against each defendant, and payment of costs in bringing the suit. Compl. 11.

In September of 2022, the State Defendants filed a motion arguing that the Complaint should be dismissed or stayed on two grounds. Mot. to Dismiss Claims for Declaratory and Injunctive Relief, and to Stay or Dismiss Claims for Damages ("**State Defs.' Mot.**") 1 (ECF No. 10). First, they argued that *Younger* abstention was appropriate because the Plaintiff was being prosecuted in a state criminal case arising out of the incident described in the Complaint. State Defs.' Mot. 1; *see Younger v. Harris,* 401 U.S. 37, 43 (1971) (recognizing a "longstanding public policy against federal court interference with state court proceedings"). Second, they argued that the Complaint should be denied in its entirety on the merits. State Defs.' Mot. 1. In November of 2022, Defendant Officer Kinney filed his motion to dismiss or stay on the same grounds as the State Defendants. Def. Officer Kinney's Mot. to Dismiss the Compl. ("**Def. Kinney's Mot.**") 1 (ECF No. 16). The Plaintiff did not meet his deadline to respond to either motion.

On January 20, 2023, the State Defendants notified the Court that the Plaintiff had entered a guilty plea to Class A Aggravated Trafficking of Scheduled Drugs in violation of 17-A M.R.S. § 1105-A on January 19, 2023. Notice/Correspondence Re: Guilty Plea ("**Correspondence**") 1 (ECF No. 17); J. and Commitment (ECF No. 17-1). The Defendants withdrew their *Younger* abstention argument, but argued that *Heck v. Humphrey*, 512 U.S. 477 (1994), barred the Plaintiff's civil claims because

5

those claims would impugn his state court conviction. Correspondence 1–2. I granted the parties an opportunity to brief the issue. Am. Order (ECF No. 19).

The Defendants filed their supplemental briefs on the *Heck* issue on February 14, 2023. Def. Officer Kinney's Suppl. Br. (ECF No. 20); State Defs.' Suppl. Br. (ECF No. 21). The Defendants elaborated on their argument that *Heck* barred the Plaintiff's claims and added a new argument that the Complaint should be dismissed on collateral estoppel grounds. Def. Officer Kinney's Suppl. Br. 2 & n.2, 6; State Defs.' Suppl. Br. 2, 6. On March 17, 2023, the Plaintiff filed his reply brief, which did not address either *Heck* or the collateral estoppel argument. Mot. to Extend Time to File Suppl. Resp. Br. (ECF No. 22).

## LEGAL STANDARDS

The Defendants ground their motions for dismissal in both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, but I resolve this case under Rule 12(b)(1) and the *Heck* doctrine. Rule 12(b)(1) requires a court to dismiss any dispute over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A federal court generally may not rule on the merits of a case without first determining that it has . . . subject matter jurisdiction." *Downs v. United States*, No. 1:15-cv-00525-JDL, 2018 WL 1036388, at *2 (D. Me. Feb. 23, 2018)). In this case, if the *Heck* doctrine applies, it acts as a jurisdictional bar to the subject matter jurisdiction of the district court. *See O'Brien v. Town of Bellingham*, 943 F.3d 514, 529 (1st Cir. 2019).

## DISCUSSION

Seidell claims that his civil rights were violated because the Defendants detained him based only on his race and arrested him for drugs that were not in his possession. Compl. 8–10. These claims implicate the Fourteenth Amendment's Equal Protection Clause and the Fourth Amendment's prohibitions against unreasonable searches and false arrests. The Defendants argue that the claims should be dismissed on the merits or because they are barred by *Heck* and collateral estoppel. Def. Officer Kinney's Suppl. Br. 2 & n.2, 6; State Defs.' Suppl. Br. 2, 6. The Plaintiff offers no response to any of these arguments. Because I find the *Heck* argument to be persuasive, I begin and end my analysis there.

In *Heck v. Humphrey*, the plaintiff, who was serving a 15-year sentence, brought a civil action under 42 U.S.C. § 1983 claiming that government agents had violated his civil rights by unlawfully investigating him and destroying exculpatory evidence. 512 U.S. at 478–79. The Supreme Court in *Heck* sought to answer "the question posed by § 1983 damages claims that . . . call into question the lawfulness of [a] conviction." *Id.* at 483. The Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486–87 (footnote omitted). Under *Heck,* courts are directed to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his

7

conviction." *Id.* at 487. "[I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction . . . has already been invalidated." *Id.*

To determine whether *Heck* bars the Plaintiff's claims, I "examine the relationship between the § 1983 claim and the conviction, including asking whether the plaintiff could prevail only by negating an element of the offense of which he was convicted." *O'Brien*, 943 F.3d at 529 (internal quotation marks omitted). This question extends to claims for both damages and equitable relief. *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005). *Heck* also applies when the plaintiff has entered a guilty plea and been convicted. *See, e.g.*, *O'Brien*, 943 F.3d at 523 (applying *Heck* bar to convictions obtained by guilty pleas); *Reeves v. United States*, No. 1:16-cv-00193-NT, 2016 WL 3189671, at *2 (D. Me. May 3, 2016) (same), *R. & R. aff'd by* 2016 WL 3190162; *see also Cabot v. Lewis*, 241 F. Supp. 3d 239, 250 (D. Mass. 2017) ("A straightforward plea of guilty to a criminal charge would obviously fall within [*Heck*'s] scope.").

Here, Seidell's Complaint can be read to assert four claims. First, the Plaintiff implies that he did not possess the drugs and that it was Beeler who placed them under his seat. This claim is inconsistent with his state court conviction for Aggravated Trafficking of Scheduled Drugs. That offense requires proof that the defendant "trafficked" in drugs, 17-A M.R.S. §§ 1105-A, 1103, and "traffic" is defined as "to possess with the intent to" sell, *id.* § 1101(17). The Plaintiff's claim that the drugs were not his clearly undermines his trafficking conviction and is thus barred by the *Heck* doctrine.

8

Second, the Plaintiff claims that he was subject to a search that violated the Fourth Amendment because the police had insufficient grounds to conduct the stop and they did so only because of his race. Success on this claim would demonstrate the invalidity of his conviction because it would have made the drugs that he was charged with possessing inadmissible evidence.[2] *See Mangual v. City of Worcester*, 285 F. Supp. 3d 465, 472–73 (D. Mass. 2018); *Perry v. Town of Reading*, No. 21-cv-11367-AK, 2022 WL 2208958, at *5 (D. Mass. June 21, 2022). As such, the *Heck* bar applies to this claim, as well.

Similarly, Seidell's Complaint could be read to claim that the Defendants violated the Equal Protection Clause by targeting Seidell because of his race. The Fourteenth Amendment forbids treating a person differently from other similarly situated people based on impermissible considerations such as race. *Clark v. Boscher*, 514 F.3d 107, 114 (1st Cir. 2008). However, a conviction based on an officer's selective enforcement of the laws through racial profiling is invalid, so the *Heck* bar would also apply to this claim. *See Fairbanks v. O'Hagan*, 255 F. Supp. 3d 239, 245–46 (D. Mass. 2017) ("Plaintiff's equal protection claim is barred by the *Heck* doctrine. A conviction derived from an officer's selective enforcement of laws in violation of a defendant's

---

[2] This is true even though the *Heck* court noted that not every Fourth Amendment violation necessarily implies the invalidity of a conviction. 512 U.S. 477, 487 n.7 (1994). This is because evidence discovered as a result of an unconstitutional search may still be admissible to support a state court conviction under "doctrines like independent source and inevitable discovery, and especially harmless error." *Id.* (internal citations omitted). The Plaintiff does not argue that any such exception applies, and I fail to see one that would. Success on this claim then would likely mean that the drugs seized would not have been admissible against him, and therefore the State would not have had a case. *See Mangual v. City of Worcester*, 285 F. Supp. 3d 465, 472 n.2 (D. Mass. 2018); *Fairbanks v. O'Hagan*, 255 F. Supp. 3d 239, 245 (D. Mass. 2017).

9

Equal Protection rights is invalid."); *see also Watson v. Shumate*, No. 3:18-cv-P460-GNS, 2018 WL 6728572, at *3 (W.D. Ky. Dec. 21, 2018) (collecting cases).

Finally, the Complaint can be read to assert a false arrest claim. The Fourth Amendment requires that warrantless arrests must be supported by probable cause to believe that the suspect has committed or is committing a crime. *See, e.g.*, *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). If the police lacked probable cause to arrest Seidell, this also would necessarily impugn his state conviction because there would be insufficient evidence to support his aggravated trafficking conviction. *See* Suppression Decision 1–5 (describing the information available to the agents before the search); *see also Reeves*, 2016 WL 3189671, at *2 (finding that plaintiff's guilty plea meant that *Heck* prevented the suit "[b]ecause a . . . § 1983 action against the state officer defendants for false arrest . . . effectively challenges the legitimacy of Plaintiff's underlying conviction"); *Mahmoud v. Jacques*, No. 2:14-cv-255-JHR, 2016 WL 1734076, at *8 (D. Me. Apr. 29, 2016) (finding that *Heck* bars a false arrest claim when "it is clear that the plaintiff's . . . conviction and false arrest claims are sufficiently factually interrelated as to bar him from pressing those claims"); *Evariste v. City of Boston*, No. 18-12597-FDS, 2020 WL 1332835, at *4 (D. Mass. Mar. 23, 2020) (holding that a plaintiff's claim for false arrest was barred by *Heck* because "[t]o argue that his arrest for that offense lacked probable cause necessarily implies the invalidity of his conviction for the very same offense"). Accordingly, this claim must be dismissed as well.

Success on any of the possible claims asserted by the Plaintiff would impugn his state court conviction. Because the Plaintiff has not alleged that the conviction has been overturned, his § 1983 claims are barred by the *Heck* doctrine and must be dismissed.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the motions to dismiss (ECF Nos. 10 & 16).

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 2nd day of May, 2023.